## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

PIERRE LAMAR TAYLOR,

                Petitioner,                Case No. 18-cv-11925
                                                Hon. Matthew F. Leitman

v.

SONAL PATEL,[1]

                Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1) AND (2) GRANTING A LIMITED CERTIFICATE OF APPEALABILITY

Petitioner Pierre Lamar Taylor is a state prisoner in the custody of the Michigan Department of Corrections. He is serving sentences of six to fifteen years in prison for involuntary manslaughter, Mich. Comp. Laws § 750.321, and two years in prison for felony firearm, Mich. Comp. Laws § 750.227b, imposed following a jury trial in the Wayne County Circuit Court.

Taylor, through counsel, has filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) He seeks habeas relief

---

[1] The proper respondent in a habeas case is the state officer having custody of the petitioner. *See* Rule 2, Rules Governing Section 2254 Cases. The warden of Taylor's present place of incarceration is Sonal Patel. The Court therefore amends the case caption to substitute Sonal Patel as the Respondent.

on three grounds: (i) trial counsel rendered ineffective assistance; (ii) the state court's findings of fact were unreasonable in light of the record; and (iii) he was denied a fair trial by the knowing presentation of perjured testimony. (*See id.*) The Court has carefully reviewed the petition and concludes that it does not state a claim upon which relief may be granted. Therefore, the Court **DENIES** the petition. However, the Court will **GRANT** a limited certificate of appealability as set forth below.

## I

## A

The Michigan Court of Appeals described the basic facts underlying Taylor's convictions as follows:

> This case arises from a shooting death in Detroit on June 12, 2011 at the scene of a street race on Epworth Street, a two-lane street in Detroit. The victim, Amran Najy, and four other passengers, arrived at the scene of the street race in a 2009 Chevrolet Impala. Nagy [sic] was killed when a bullet was fired into the vehicle. An officer on the scene said that Najy was "slumped over, stuck in the vehicle." Another officer observed that a bullet "had gone through the trunk lid into the rear passenger seat on the ... passenger side." Based on the testimony of several witnesses at trial, a jury determined defendant to be the shooter.

*People v. Taylor*, 2014 WL 4160557, at *1 (Mich. Ct. App. Aug. 21, 2014).

**B**

Taylor was originally charged with second-degree murder, involuntary manslaughter, and felony firearm. His preliminary examination was held on September 27, 2011.

Two prosecution witnesses testified at the preliminary examination. First, Hasem Salem testified that he saw Taylor at a street race in Detroit on the night of the shooting and that Taylor was making angry gestures toward the car in which the victim (Najy) was driving. However, Salem acknowledged that he did not see Taylor with a gun and did not see Taylor fire any shots. Salem also did not recall whether Taylor was standing with any other people at the race.

Second, Iran Tarrant testified on direct examination that Taylor was the shooter. However, on cross-examination, Tarrant was less definitive. When asked whether he could be mistaken that Taylor was the shooter, Tarrant answered: "No, maybe not, no." (9/27/2011 Prelim. Exam. Tr. at 42, ECF No. 5-2, PageID.246.) Tarrant later acknowledged that it was "possible" that he was mistaken in his identification of Taylor. (*Id.* at 47, PageID.251.) Tarrant also did not recall whether he saw Taylor standing with any other people at the race.

Taylor's attorney, Ronald McDuffie, then called Taylor to testify. Taylor testified that he was present at the street race on the evening that Najy was shot. He

explained that he went to the race with multiple family members, and he said that he stayed with them the entire time. He denied firing any shots.

At the conclusion of the testimony, McDuffie argued that the examining magistrate should believe Taylor, disbelieve the prosecution's witnesses, and dismiss the charges against Taylor. Instead, the magistrate judge concluded that the jury should resolve the credibility contest between Taylor and the prosecution's witnesses, and the magistrate bound the case over for trial.

## C

Between the conclusion of the preliminary examination and the beginning of trial, Taylor's recollection changed. After speaking with a family member and reviewing Facebook posts, Taylor recalled that – contrary to his preliminary examination testimony – he was in fact *not* present at the street race on the evening that Najy was shot. He decided that he wanted to present an alibi defense at trial.

Taylor also changed lawyers between the preliminary examination and the trial. He retained attorney Antonio Tuddles to represent him at trial. Tuddles presented two defenses. First, Tuddles contended that the prosecution's witnesses could not reliably identify Taylor as the shooter. Second, Tuddles presented Taylor's alibi defense. Taylor testified in support of that defense. Taylor told the jury that he did not attend the street race on the night of the shooting and that he was actually riding his motorcycle on Belle Isle that evening. On cross-examination, the

prosecution confronted Taylor with the conflict between his trial testimony and his testimony at the preliminary examination that he had been at the street race on the night of the shooting.

At the conclusion of the trial, the jury convicted Taylor of involuntary manslaughter and felony firearm. The trial court sentenced him to six to fifteen years in prison for the involuntary-manslaughter conviction and two years in prison for the felony-firearm conviction.

## D

Taylor later filed a motion for new trial. He argued that the prosecution knowingly presented perjured testimony from witness Robert Hanson. Hanson testified at trial that:

> he frequently attended the street races, and that he saw the Impala arrive at the scene. Further, as the driver of the car made a U-turn on Epworth Street in order to clear the way for the street race, Hanson saw defendant pull out a black gun and fire it toward the car. Hanson identified defendant at trial, saying that he could "never forget his face" because defendant "shot one of [Hanson's] friends that [he hung] out with every day." Hanson, who was standing 18 to 20 feet from defendant, testified that he saw defendant pick up the shell, throw it to his right, and tell a friend, "Oh, he's gonna be mad in the morning when he look[s] at that size of that bullet hole in his car." Approximately 10 minutes later, Hanson received a phone call and went to the intersection of Linwood Street and West Grand Boulevard, where he saw the Impala "mangled" on the median.

> Two weeks later, Hanson saw defendant at the street races, and sent a text message to a detective with the license plate number of the car in which defendant arrived. Hanson identified defendant in a photographic lineup on July 24, 2011.

*Taylor*, 2014 WL 4160557, at *1.

This testimony conflicted with a statement Hanson had given to police shortly after the shooting. In that statement, Hanson said that he did not see anyone with a gun on the night of the shooting. Taylor argued that given the obvious inconsistency between Hanson's statement and his trial testimony, the prosecution must have known that the trial testimony was false.

The trial court agreed with Taylor and granted a new trial. The prosecution appealed that ruling, and the Michigan Court of Appeals reversed and remanded for further proceedings.

On remand, Taylor presented claims of ineffective assistance of counsel – the same claims that he presents in this petition and that are described in detail below. The trial court denied relief on those claims. (*See* ECF No. 5-21, PageID.1960-1970.) As further described in detail below, the Michigan Court of Appeals thereafter rejected Taylor's ineffective assistance claims and affirmed Taylor's convictions. *See People v. Taylor*, 2016 WL 5886316 (Mich. Ct. App. Oct. 6, 2016).

On June 18, 2018, Taylor filed this habeas petition. He brings the following claims for relief:

I. The state court's application of *Strickland v. Washington*, was objectively unreasonable where Petitioner was denied a fair trial by ineffective assistance of trial counsel in failure to investigate, prepare for trial, seek suppression, introduce evidence, and to object.

II. The state court findings of fact are contrary to the record and relief merited for the unreasonable determination of facts in light of the record.

III. Petitioner denied a fair trial by knowing presentation of perjured testimony.

(Pet., ECF No. 1, PageID.2-3.)

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

The Court begins with Taylor's ineffective assistance of counsel claims. An ineffective assistance of counsel claim has two components. A petitioner must show that counsel's performance was deficient and that the deficiency prejudiced the defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because the Michigan Court of Appeals adjudicated all of Taylor's ineffective assistance of counsel claims on the merits, AEDPA's deferential standard of review applies to these claims. *See Kernan v. Hinojosa*, 136 S. Ct. 1603, 1604 (2016). Under AEDPA, "the question" for this Court "is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).

## A

Taylor's first ineffective assistance of counsel claim concerns the decision of Taylor's initial counsel – Ronald McDuffie – to call Taylor to testify at the preliminary examination. This claim has two components.

First, Taylor argues that McDuffie's decision to present his (Taylor's) testimony was based upon an incorrect understanding of the law. McDuffie called Taylor as a witness based, in part, on his (McDuffie's) belief that the examining magistrate could (1) weigh the credibility of Taylor's testimony against the testimony of the prosecution's witnesses and (2) dismiss the charges if the testimony

of the prosecution's witnesses, when weighed against Taylor's testimony, failed to establish probable cause that Taylor committed the shooting. (*See, e.g.,* ECF No. 5-16, PageID.1697.)  Taylor contends that, *as a matter of law*, the magistrate could *not* dismiss the charges based upon a credibility determination; he insists that Michigan law requires any credibility contest among preliminary examination witnesses to be resolved by a jury at trial.  (*See* 11/22/2019 Tr. 21-22, ECF No. 12, PageID.2833-2834).   Taylor concludes that that because magistrate could not have dismissed the charges based upon his testimony, there was no benefit to having him testify, and his testimony served only to subject him to substantial risks – such as having the testimony used against him at trial.  And Taylor says that McDuffie was ineffective for calling him (Taylor) to testify when he had nothing to gain and much to lose.

Second, Taylor contends that McDuffie failed to prepare him to testify at the preliminary examination.  Taylor says that McDuffie did not explain to him what to expect at the preliminary examination, did not prepare him to testify, and "blindly led" him into admitting he was present at the street race on the day of the shooting. (Pet., ECF No. 1-1, PageID.29.)  And Taylor says that because McDuffie did not prepare him, he mistakenly said that he was at the street race – instead of riding his motorcycle on Belle Isle – on the evening of the shooting.

The Michigan Court of Appeals considered both components of Taylor's claim that McDuffie was ineffective on direct review and rejected them:

At the preliminary examination, defendant, on questioning by his counsel, Ronald McDuffie, testified that he attended the street races held in Detroit on June 12, 2011, the day of the shooting. At trial, however, defendant testified that he was not present in that area on the day of the shooting. He explained that he had gone to the street races in Detroit on a single occasion. While he was unsure of the date he attended the races, defendant testified that it was not the day of the shooting. The prosecutor used defendant's preliminary examination testimony to impeach his trial testimony. Thus, defendant's preliminary examination testimony was harmful to defendant at trial.

At the evidentiary hearing held regarding defendant's ineffective assistance claims, McDuffie explained why he called defendant to testify. Defendant had told McDuffie that he was present at the races on the day the shooting occurred. Defendant explained, however, that he was with a relative the entire time, and thus was not the shooter. McDuffie believed the prosecutor's identification evidence was weak. He had also spoken with the prosecutor regarding the possibility of defendant taking a polygraph examination. McDuffie believed that even if defendant was bound over at the preliminary examination, if he passed a polygraph examination with a statement that was consistent with his preliminary examination testimony, the charges could be dropped. For his part, Rajesh Prasad, who prosecuted the case, confirmed that there were discussions regarding a polygraph examination. Prasad testified that he likely would not have dropped the charges had defendant passed such an examination, but that the ultimate decision whether to do so would have been "above [his] head."

Defendant denied that any conversations took place concerning a polygraph examination. He testified that before the preliminary examination, he spoke with McDuffie and described a day he attended the races, but was not the same day as the shooting. He answered affirmatively when McDuffie asked if he was present in

the area on June 12, 2011, because he was unaware of the date he was present in the area and assumed McDuffie was talking about the day he actually was present, not the day of the shooting. Defendant testified that McDuffie decided alone that defendant would testify.

When the trial court ruled on this issue, it found McDuffie credible.[ ] It also found that the decision to have defendant testify was a strategic decision and that defendant had not shown that strategy to be unsound. We agree with the trial court's assessment. "The district court must consider not only the weight and competency of the evidence, but also the credibility of the witnesses, and it may consider evidence in defense." *People v. Redden*, 290 Mich. App. 65, 84; 799 NW2d. 184 (2010). *See also People v. Yost*, 468 Mich. 122, 127; 659 NW2d. 604 (2003) ("Our prior case law recognizes the propriety of an examining magistrate's considering the credibility of witnesses."). Presenting defendant's testimony at the preliminary examination may have led the trial court to conclude that the prosecutor's witnesses were not credible. The record also supports McDuffie's explanation that had defendant passed a polygraph, the charges might have been dropped.[3] McDuffie's belief that consistent testimony at the preliminary examination would have aided defendant in this regard is not patently unsound.

Nor does it appear that there was any reason for McDuffie to expect that defendant's preliminary examination testimony would later harm him at trial. Clearly, throughout the preliminary examination, McDuffie was relying on defendant's explanation that while he was present in the area when the shooting occurred, he was not the shooter. Only later did defendant change his story, claiming he was not present at all on June 12, 2011.[4] But there was no reason for McDuffie to expect defendant's recollection to change so drastically between the preliminary examination and trial. While defendant's preliminary examination testimony proved damaging, this Court will not second-guess McDuffie's strategic choices

with the benefit of hindsight. *See People v. Dunigan*, 299 Mich. App. 579, 589-590; 831 N.W.2d. 243 (2013). Thus, although the strategy of calling defendant to testify at the preliminary examination ultimately proved unsuccessful, defendant fails to overcome the presumption that trial counsel's performance was born of sound strategy. *See People v. Petri*, 279 Mich. App. 407, 412; 760 N.W.2d. 882 (2008) ("A failed strategy does not constitute deficient performance.").

---

[3] Although Prasad testified that a passed polygraph would likely not have changed his mind, he also explained that the decision was not his to make. Thus, despite Prasad's personal reluctance to dismiss a matter based on a polygraph, the possibility remained open.

[4] At the preliminary examination, before defendant testified, it had been made very clear that June 12, 2011, was when the shooting occurred. Thus, defendant's explanation that he believed McDuffie was asking about a day other than when the shooting occurred is simply unbelievable.

*Taylor*, 2016 WL 5886316, at ** 3-4.

Taylor has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. As an initial matter, the Michigan Court of Appeals' determination that, as McDuffie believed, the examining magistrate *was* permitted to weigh witness credibility, including Taylor's own credibility, and *could have dismissed* the charges against Taylor if, based upon that weighing, the magistrate found a lack of probable cause, is a matter of state law that this Court may not question on habeas review. *See*

*Seymour v. Walker,* 224 F.3d 542, 558 (6th Cir.2000) ("[I]t is not for this court to question the state court's interpretation of its own law").[2] Thus, this Court cannot grant habeas relief on the ground that McDuffie's strategy of seeking dismissal based upon the relative credibility of the witnesses was contrary to Michigan law.

Nor is Taylor entitled to relief based upon the Michigan Court of Appeals' determination that McDuffie was not ineffective when he had Taylor testify at the preliminary examination. As noted above, that decision is entitled to double deference in these habeas proceedings. *See Harrington*, 562 U.S. at 105. And while reasonable attorneys would certainly have a basis for questioning McDuffie's strategy – indeed, anyone familiar with the realities of criminal defense practice in Michigan would recognize the strategy as a real longshot – Taylor has not shown that, under the highly deferential standard applicable here, the Michigan Court of Appeals unreasonably found the strategy to not constitute ineffective assistance. As noted above, McDuffie did score some important points during his cross-examination of the prosecution's witnesses at the preliminary examination. In

---

[2] While the Court does not review the Michigan Court of Appeals' interpretation of state law, the Court notes that substantial support exists for that court's conclusion on this point. **Error! Main Document Only.**As the Michigan Supreme Court recently confirmed in *People v. Anderson*, 912 N.W.2d 503 (Mich. 2018), a magistrate's duty is to consider the credibility of both the prosecution and defense witnesses and to make a probable cause determination based, at least in part, on those credibility determinations. *See id.* at 510-11.

contrast, the prosecution did not undermine Taylor's testimony in any meaningful way when it cross-examined him. Thus, there is at least some reasonable support for the Michigan Court of Appeals' conclusion that McDuffie had a rational basis for presenting Taylor's testimony and for seeking dismissal on the ground that Taylor's testimony was far more credible than that offered by the prosecution's witnesses. Moreover, it was not unreasonable for the Michigan Court of Appeals to conclude that McDuffie had no reason to believe that, when called as a witness, Taylor would mistakenly testify that he attended the street race on June 11th.[3] For all of these reasons, under the highly deferential standard of review applicable here, Taylor is not entitled to federal habeas relief due to McDuffie's decision to call him (Taylor) as a witness at the preliminary examination.

Finally, Taylor has not shown that the state court erred when it rejected his claim that McDuffie failed to prepare him for his preliminary examination testimony. At the post-trial evidentiary hearing, McDuffie testified that the questions he asked Taylor were based on information provided by Taylor. (*See* 8/23/2015 Tr. at 25, ECF No. 5-16, PageID.1702.) McDuffie also testified that Taylor made the decision to testify after McDuffie offered him several alternatives.

---

[3] Indeed, as explained immediately in text below, McDuffie testified in the state trial court that he met with and prepared Taylor prior to Taylor's preliminary examination testimony and that Taylor's testimony was based off of that preparation. And the state courts found that testimony by McDuffie to be credible.

(*See id.* at 27, PageID.1704.) The trial court heard Taylor's testimony to the contrary and – as Taylor conceded in this proceeding (*see* 11/22/2019 Tr. at 29, ECF No. 12, PageID.2841) – believed McDuffie.· The Michigan Court of Appeals then accepted the trial court's decision to credit McDuffie's testimony over Taylor's. *See Taylor*, 2016 WL 5886316, at \*3. Taylor has not shown any error by either state court in believing McDuffie's assertion that he prepared Taylor to testify over Taylor's assertion that he did not. Accordingly, Taylor is not entitled to federal habeas relief on his claim that McDuffie was ineffective for failing to prepare him for his preliminary examination testimony.

## B

The Court next turns to Taylor's claims that he received ineffective assistance from his trial counsel, Antonio Tuddles. None of these claims entitle Taylor to relief.

## 1

Taylor first contends that Tuddles was ineffective for failing to move to exclude Taylor's preliminary examination testimony because it was the product of McDuffie's ineffective assistance. The Michigan Court of Appeals considered that claim on the merits and rejected it. See *id.* at \*4. That court held that Tuddles was not ineffective because McDuffie's strategy was not unsound, and thus a motion to exclude Taylor's testimony would have been denied. *See id.* Under the doubly-deferential standard of review applicable here – and for many of the same reasons

explained above with respect to the Michigan Court of Appeals' ruling on Taylor's claim that McDuffie was ineffective – Taylor has not shown that this ruling was an unreasonable application of *Strickland*.

## 2

Taylor next argues that Tuddles was ineffective with respect to the admission at trial of Iran Tarrant's preliminary examination testimony. As noted above, at the preliminary examination, Tarrant identified Taylor as the shooter. At the time of trial, the prosecution could not locate Tarrant. It persuaded the trial court to allow admission of Tarrant's preliminary examination testimony under Michigan Rule of Evidence 804(b) on the ground that Tarrant was unavailable. Taylor argues that Tuddles was ineffective for failing to challenge the finding that Tarrant was unavailable and for failing to seek a missing witness instruction.

The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Defendant's claim of ineffective assistance fails because the arguments he claims Tuddles should have made were clearly meritless. MRE 804(b)(1) permits the use of "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered ... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." This exception to the general prohibition against the admission of hearsay is only available, however, if the witness is unavailable. MRE 804(b). A witness is deemed unavailable if the witness "is absent from the hearing and the proponent of a statement

has been unable to procure the declarant's attendance ... by process or other reasonable means, and in a criminal case, due diligence is shown." MRE 804(a)(5).

Defendant claims that the efforts made in this case consisted of "making a few attempts to serve process and then stopping when the mother of the witness says [Tarrant] does not want to come to court." The record does not support defendant's claim. As Diaz explained, Tarrant was initially cooperative. Diaz then attempted to visit Tarrant at his home before the start of trial, only to find that the home had burned down. Officers were eventually able to locate Tarrant's mother, who was belligerent, uncooperative, and indicated that Tarrant would not appear to testify. The prosecutor obtained a witness detainer. With the detainer in hand, the Fugitive Apprehension Team began searching for Tarrant. Unfortunately, despite pursuing a number of potential leads regarding Tarrant's location,[5] the team was unable to find him. Under the circumstances, the efforts made to locate Tarrant constituted diligent, good-faith efforts. Accordingly, an objection to the admission of his preliminary examination testimony would have been futile, as Tuddles aptly recognized. Counsel is not ineffective for failing to raise a futile objection.

_____

[5] The team checked Tarrant's bridge card usage, only to find that it had not been used for several months. They checked with the medical examiner's office. They tried to find a last known address from the post office. They checked police reports. They also tried to find utility services in Tarrant's name, but found none. Diaz attempted to call Tarrant on his personal cell phone, but the number was no longer in use.

*Taylor*, 2016 WL 5886316, at *5. The Michigan Court of Appeals also denied

Taylor's related claim that Tuddles was ineffective for failing to seek a missing

witness instruction:

> Defendant similarly contends that counsel should have
> sought a missing witness instruction. It is difficult to fault
> counsel on this point because Tuddles did pursue such an
> instruction through the end of trial. Further, the trial court
> correctly declined to give the instruction because it is
> warranted only if the prosecutor did not exercise due
> diligence to procure a witness's testimony, and we agree
> that the prosecutor established that Tarrant could not be
> produced despite the exercise of due diligence. See *People
> v. Eccles,* 260 Mich.App. 379, 388; 677 NW2d. 76 (2004).

*Id.*

Taylor has not shown that the Michigan Court of Appeals' rulings were contrary to, or an unreasonable application of, clearly established federal law. Taylor argues that the prosecutor did not exercise the required diligence when attempting to locate Tarrant. His argument is premised on a state statute: Mich. Comp. Laws § 767.40a(5) ("The prosecuting attorney or investigative law enforcement agency shall provide to the defendant, or defense counsel, upon request, reasonable assistance, including investigative assistance, as may be necessary to locate and serve process upon a witness."). But both the state trial court and the Michigan Court of Appeals determined that the prosecution did comply with its obligations under state law. (*See* ECF No. 5-8, PageID.711; *Taylor*, 2016 WL 5886316, at *5). And this Court may not revisit that state-law determination on habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."). Moreover, given the state court's findings that the prosecution demonstrated due diligence, that Taylor was not entitled to a missing

witness instruction, and that Tuddles did in fact "pursue such an instruction through the end of trial" *Taylor*, 2016 WL 5886316, at *5, Taylor has not shown that the Michigan Court of Appeals unreasonably concluded that Tuddles did not render ineffective assistance related to Tarrant's testimony. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial.").

### 3

Taylor next argues that Tuddles was ineffective for failing to interview two defense witnesses – Michael Smith and Kourtney Manley – before calling them to testify at trial. Smith testified that he and Taylor went to the street race on June 11, 2011 (the evening of the shooting). This testimony clearly undermined Taylor's alibi defense. After trial, Smith changed his story and said that his initial recollection about the evening in question was mistaken. He testified at a state court post-conviction hearing that he stayed home the night of June 11th. (*See* 1/22/2016 Tr. at 62; ECF No. 5-17, PageID.1817.) Taylor insists that Tuddles would not have called Smith as a witness had Tuddles interviewed Smith first.

Manley testified that he was not at the street race on June 11, 2011, and that he and Taylor, instead, went to the street race on June 20, 2011. Taylor asserts that, had Tuddles interviewed Manley before he testified, Tuddles could have elicited testimony that when Manley and Taylor went to the street races they always went

with a group. Taylor seems to argue that this would have supported his defense that he was not at the street race on June 11th because Manley (and, by implication, their group) was not at the race on the 11th.

The Michigan Court of Appeals reviewed these claims on direct review and rejected them. That court noted that following the evidentiary hearing in the trial court, the trial court found as a matter of fact that Tuddles did meet with Smith and Manley before calling them to testify. The appellate court saw no error in that factual finding and concluded that "[n]othing in the record indicates that any lack of preparation by Tuddles resulted in him being ignorant of important evidence." *Taylor*, 2016 WL 5886316, at ** 5-6.

Taylor has not shown that the state appellate court's decision was either contrary to, or an unreasonable application of, clearly-established federal law. First, he has failed to explain how Smith's mistaken testimony is attributable to Tuddles or how Tuddles would have discovered this mistake through an interview. For instance, Taylor has not shown that if Tuddles had interviewed Smith prior to Smith's testimony, Smith would have recalled at that time that he did not attend the races on June 11th. Second, Taylor has not shown that there is a reasonable probability that the result of his trial would have been different if Tuddles had elicited additional testimony from Manley. Taylor is therefore not entitled to federal habeas relief on this claim.

Next, Taylor argues that Tuddles was ineffective for failing to impeach prosecution witness Hanson. More specifically, Taylor contends that Tuddles should have exposed important contradictions between Hanson's trial testimony and statements that Hanson had previously given to police. For instance, as described above, Hanson testified at trial that he saw Taylor pull out a gun and shoot at the car, but he had previously told the police that he did not see anyone with a gun. Hanson later admitted that his trial testimony was false.

The Michigan Court of Appeals held that Tuddles' cross-examination of Hanson did not deny Taylor his right to the effective assistance of counsel. That court bypassed *Strickland's* performance prong and proceeded directly to the prejudice prong and concluded that Taylor did not suffer prejudice related to Hanson's testimony:

> Defendant next contends that Tuddles was ineffective for failing to impeach Hanson with his prior statement to the police. We disagree.
>
> Defendant contends, and the prosecution agrees, that Tuddles should have made additional attempts to impeach Hanson with his statement to the police. But we need not decide that question, because this Court has already determined that it is "not reasonably likely that Hanson's testimony could have affected the jury's judgment." *Taylor,* unpub op at 7.[7] To prevail on his ineffective assistance claim, defendant bears the burden of demonstrating that it is reasonably likely that Tuddles's failure to impeach Hanson's trial testimony affected the

outcome of trial. But if it is not reasonably likely that Hanson's trial testimony affected the jury's verdict, it cannot be said that impeaching that testimony would have any likelihood of leading to a different result.

_____

[7] Even if we were not bound by this Court's prior decision, we agree with it. Because four other witnesses identified defendant as the shooter, Hanson's testimony was cumulative and not likely to affect the outcome of the trial.

*Taylor*, 2016 WL 5886316, at *6 and *7 n.7. While the Michigan Court of Appeals declined to decide whether Tuddles could have made additional attempts to impeach Hanson, in an earlier opinion, that court concluded that Tuddles had in fact "cross-examin[ed] Hanson at trial regarding the discrepancies between his direct trial testimony and his earlier statement." *Taylor*, 2014 WL 4160557, at *1.

Taylor has not shown that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, clearly established federal law. As noted above, Tuddles did not ignore Hanson's contradictory statements. Instead, he highlighted the discrepancy between Hanson's statement to police and Hanson's trial testimony for the jury during Hanson's cross-examination. Moreover, Taylor has not shown that the Michigan Court of Appeals' unreasonably concluded that any additional cross-examination of Hanson would have been cumulative of other evidence and testimony. Simply put, Taylor has not shown that there is a reasonable probability additional cross examination of Hanson would have led to a different

result at trial. Accordingly, Taylor is not entitled to federal habeas relief on this claim.

**5**

Taylor next argues that Tuddles was ineffective for failing to present one of two alibi witness, Jeffrey Mathes or Anthony Simpson.[4] Taylor testified at trial that, on the night of June 11, 2011, he and a friend – either Mathes or Simpson, he could not recall which – rode motorcycles on Belle Isle and did *not* go to the street race. Taylor asserts that Tuddles should have called Mathes or Simpson to substantiate his alibi defense that he was not at the race on the night of the shooting.

The Michigan Court of Appeals considered this claim on the merits and rejected it. The court first held that Tuddles' decision not to call Simpson as a witness did not prejudice Taylor because, as Taylor now admits,[5] Taylor was not riding with Simpson on the day of the shooting. *See Taylor*, 2016 WL 5886316, at *7. The court further held that Tuddles' failure to call Mathes as a witness did not prejudice Taylor because, as Mathes admitted at the post-trial evidentiary hearing,

---

[4] In Taylor's post-hearing brief, he also raises a claim that Tuddles was ineffective by denigrating the alibi defense during his opening statement and closing argument. This claim has not been properly exhausted because it was never raised in the state courts. Moreover, Taylor did not raise this claim in his petition. The Court declines to consider this unexhausted and late-presented claim.

[5] At a post-trial state-court evidentiary hearing, Taylor testified that he and Mathes, not Simpson, were riding their motorcycles on June 11th. (*See* 4/1/2016 Tr. at 24-25, ECF No. 5-20, PageID.1914-1915.)

he (Mathes) could not recall the date on which he went riding with Taylor, and thus his testimony would have not meaningfully advanced Taylor's alibi defense. *See id.*

Taylor has failed to show that these rulings were contrary to, or an unreasonable application of, clearly established federal law. Simply put, Taylor has not demonstrated how the testimony of either Simpson or Mathes would have materially advanced his alibi defense. Accordingly, Taylor is not entitled to federal habeas relief on this claim.

**6**

Taylor next argues that Tuddles was ineffective because Tuddles failed to introduce into evidence a Facebook post written by Taylor and dated June 11, 2011. The post stated Taylor was going to Detroit to "Summer Jams," and then to the "island." *Taylor*, 2016 WL 5886316, at *8. Taylor says that he reviewed this post after his preliminary examination testimony and that doing so helped reminded him that he went to Belle Isle, *not* to the street race, on the night of the shooting. Taylor says that Tuddles should have sought admission of the post because the post would have helped the jury understand how and why Taylor's trial testimony differed from his preliminary examination testimony.

The Michigan Court of Appeals considered this claim on direct review and rejected it. That court held that the Facebook post was inadmissible hearsay because it would have been offered to prove the truth of the matter asserted, that is, to prove

Taylor's whereabouts. *See id.* at *8 n.9. The court further held that the post would have been cumulative because Taylor and his sister both testified about the post and how it influenced Taylor's changed testimony. *See id.* at *8. The court rejected Taylor's argument that exclusion of this testimony as hearsay violated his right to present a defense because Taylor was able to present his alibi defense through his own testimony and the hearsay rule was not arbitrary or disproportionate to the purpose of the rule. *See id.* at *8 n.9.

Taylor has not shown that the Michigan Court of Appeals' decision was an unreasonable application of, or contrary to, clearly established federal law. First, the court's ruling that the Facebook post was inadmissible hearsay is a matter of Michigan state law that this Court may not second-guess on habeas review, and Taylor cannot show that Tuddles was ineffective for failing to seek admission of the inadmissible post. *See Coley*, 706 F.3d at 752 (an attorney is not ineffective in failing to raise meritless argument). Second, Taylor has not demonstrated that the state appellate court unreasonably determined that exclusion of the Facebook post did not violate his right to present a defense because he was able to present his alibi defense and to explain the basis of his memory change though other evidence. For all of these reasons, Taylor is not entitled to federal habeas relief on this claim.

Next, Taylor argues that he received ineffective assistance when Tuddles failed to move for a mistrial. Taylor says that Tuddles should have moved for a mistrial on the ground that the testimony of two prosecution witnesses – Saleh Sayah and Joseph Salvidar – was tainted because they spoke to Hanson about his testimony after he testified and before they testified. While Tuddles did not seek a mistrial, he did cross-examine these witnesses about their conversations with Hanson. Sayah testified that he talked to Hanson primarily about what happened in the courtroom when Hanson testified, but not about the specific details of what happened on the night of the shooting. (*See* 4/3/2012 Trial Tr. at 64, ECF No. 5-7, PageID.629-30.) Salvidar admitted to talking to Hanson before and after Hanson's testimony. Hanson told Salvidar that defense counsel would not allow Hanson to fully answer questions but Hanson did "not really" discuss anything else about the case. (*Id.* at 111, PageID.676.) Taylor contends that the witnesses' testimony was colored by their discussions with Hanson and that Tuddles's failure to request a mistrial resulted in prejudice.

The Michigan Court of Appeals considered this claim on direct review and rejected it:

> Generally, there are three remedies available when a witness violates a sequestration order: holding the offending witness in contempt, allowing cross-examination regarding the violation, or precluding the

witness from testifying. *People v. Meconi*, 277 Mich.App. 651, 654; 746 NW2d. 881 (2008). But precluding witnesses from testifying "is an extreme remedy that should be sparingly used." *Id.* Simply because the witnesses spoke with each other outside of court, and not regarding the substance of their testimony, would not warrant such an extreme sanction. *Cf. id.* at 654–655 (where a witness had been present in the courtroom in violation of a sequestration order, but heard only "short opening statements, not testimony," it was an abuse of discretion to prohibit the witness from testifying). Rather, under the circumstances, Tuddles pursued a reasonable course of action-cross-examining the witnesses regarding their conversations. Tuddles then used the testimony he elicited to argue that the witnesses were not credible. This was a reasonable strategic choice by counsel. Counsel was not ineffective for failing to request a more severe sanction, which almost certainly would have been denied.

*Taylor*, 2016 WL 5886316, at *8.

Taylor has not shown that the Michigan Court of Appeals' decision was an unreasonable application of, or contrary to, clearly established federal law. He has not cited any clearly established law requiring the sequestration of witnesses or a particular remedy when a sequestration order is violated. Nor has he established that Tuddles's manner of addressing the violation of the sequestration order was an unreasonable way of handling the violation within the options available to him under state law. For all of these reasons, Taylor is not entitled to federal habeas relief on this claim.

Finally, Taylor contends that all of his attorneys' errors, considered cumulatively, denied him a fair trial. This cumulative error claim is not cognizable on federal habeas review. *See Webster v. Horton*, -- F. App'x ---, 2019 WL 6123515, *4 (6th Cir. Oct. 24, 2019) ("Webster argued that the trial court's cumulative errors entitled him to habeas relief. As stated by the district court, such claims of cumulated trial errors are not cognizable under § 2254). *See also Moreland v. Bradshaw*, 699 F.3d 908, 931 (6th Cir. 2012). Taylor is therefore not entitled to federal habeas relief on this claim.

**IV**

In Taylor's second claim for habeas relief, he argues that the state court findings of fact are contrary to the record and that relief is warranted under 28 U.S.C. § 2254(d)(2)'s "unreasonable determination of the facts" clause. Section 2254(d)(2) provides that a federal court may grant habeas relief if a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A habeas petitioner bears the burden of rebutting a state court's factual findings "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). And "a state-court factual determination is not unreasonable merely because the federal habeas court would

have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301 (2010).

Taylor raises this as a separate claim for habeas relief, but, in his brief, he combines this claim and his ineffective assistance of counsel claim in one section. Indeed, Taylor provides little argument to support relief under Section 2254(d)(2). His argument rest in large part on his contention that McDuffie's testimony at the state court evidentiary hearing was not believable. However, as Taylor acknowledged to this Court (*see* 11/22/2019 Tr. at 29, ECF No. 12, PageID.2841), the trial court found McDuffie's testimony to be credible, and the Michigan Court of Appeals held that that determination was reasonable. *See Taylor*, 2016 WL 5886316, at *3. While Taylor might find McDuffie's testimony incredible or unpersuasive, his disagreement with the state courts' credibility assessment does not rebut the presumption of correctness given to state court factual findings. The same analysis applies to the remainder of Taylor's factual-determination claims. He has not shown the Michigan Court of Appeals' decision rested upon an unreasonable determination of the facts, and he therefore is not entitled to federal habeas relief on this claim.

## V

In Taylor's final claim for habeas relief, he argues that the prosecutor committed misconduct when he knowingly presented false testimony from witness

Robert Hanson.  As described above, Hanson's trial testimony that he saw Taylor commit the shooting was inconsistent with prior statements that Hanson had given to the police.  And as further described above, following an evidentiary hearing,[6] the state trial court held that the prosecutor knowingly presented Hanson's false and material testimony and granted a new trial. (*See* ECF No. 5-14, PageID.1401-02.) The Michigan Court of Appeals granted the prosecution's application for leave to appeal that ruling, reversed the trial court's decision, and remanded for reinstatement of Taylor's convictions and sentences. *See Taylor*, 2014 WL 4160557, at ** 6-7.

The Michigan Court of Appeals recognized that a prosecutor's knowing presentation of material, false testimony could violate a defendant's due process rights.  But it concluded that the prosecutor did not know Hanson's testimony was false, and, even if the prosecutor did, the testimony was not material. *See id.* at *6.

Taylor has not shown that the Michigan Court of Appeals' holding that the prosecutor did not knowingly present false testimony was unreasonable.  Hanson's trial testimony clearly contradicted his earlier police statement.  But Taylor has not made a sufficient showing that would compel the conclusion the prosecutor knew Hanson's trial testimony was false.  Nor has Taylor shown that the Michigan Court

---

[6]  A transcript of the evidentiary hearing was not filed.  Relevant portions of the evidentiary hearing are quoted in the parties' briefs in this Court and in the state court briefs.  Because the parties do not dispute the nature and content of the testimony adduced at the evidentiary hearing, the Court may decide this claim without requiring production of the state-court evidentiary hearing transcript.

of Appeals' contrary conclusion – *i.e.*, that the prosecutor did not know the testimony was false – was unreasonable. Taylor has therefore failed to show that he is entitled to federal habeas relief on this claim.

## VI

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (a "COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court finds that jurists of reason could debate the Court's conclusion with respect to Taylor's ineffective assistance of counsel claims arising from McDuffie's decision to call Taylor to testify at the preliminary examination and Tuddles's failure to move to exclude the admission of that testimony at trial. The Court will grant a limited certificate of appealability with respect to those two claims only. The Court will deny a certificate of appealability with respect to Taylor's other claims because

jurists of reason could not debate the Court's conclusion that he has failed to demonstrate an entitlement to habeas relief with respect to those claims.

## VII

For the reasons set forth above, the Court **DENIES** Taylor's petition for writ of habeas corpus (ECF No. 1), and it **GRANTS** Taylor a limited certificate of appealability as set forth above.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: March 30, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 30, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764